**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
JAMES SMITH                              :
                                         :    13 Cr. 0889 (RMB)
                    Petitioner,        :    20 Cv. 6844 (RMB)
                                         :
      -v-                                :    **DECISION & ORDER**
                                         :
UNITED STATES OF AMERICA,                :
                                         :
                    Respondent.        :
---------------------------------------------------------------x

On or about August 24, 2020, James Smith ("Smith" or "Petitioner") filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Smith had been sentenced on July 27, 2016 for conspiracy to commit Hobbs Act robbery, conspiracy to distribute cocaine in violation of 21 U.S.C. § 841, and discharging a firearm in furtherance of the two conspiracies and is currently serving his 34-year sentence at FCI Otisville.

On or about January 29, 2021, September 2, 2022 and December 8, 2022, Smith filed several "supplements" to his § 2255 petition (collectively referred to as "§ 2255 Petition"). Smith alleges, among other things, (1) that the Hobbs Act robbery conspiracy conviction is improper because "there could never be a 'deprivation of property right' in a case where the government alleges the object of the robbery was a controlled substance," (§ 2255 Petition, dated Aug. 24, 2020, at 10); (2) that "the federal government does not have a general police power" and therefore "has no jurisdiction" over robbery, which is a "State crime[]" (§ 2255 Petition, dated Aug. 24, 2020, at 3); (3) that his counsel, Avraham C. Moskowitz, a member of the CJA panel, provided ineffective assistance by failing to challenge the robbery conspiracy conviction on the ground that "Smith['s] robbery plan failed," (§ 2255 Petition, dated Sept. 2, 2022, at 3); and (4) that his sentence under 18 U.S.C. § 924(c) is unconstitutional in light of *United States v. Davis*, 139 S. Ct.

1

2319 (2019). (*See* § 2255 Petition, dated Aug. 24, 2020, at 5 ("Movant is entitled to relief . . . because his claim under *Davis* is cognizable.").)[1]

On or about May 10, 2022, Smith separately filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582 (referred to as "§ 3582 Motion"). Smith, who is a 48-year-old male, contends that he (1) suffers from a "combination of medical and mental health conditions" which constitute "extraordinary and compelling reasons" for his early release, and (2) does not pose a risk to another person or to the community, as he is "demonstrating significant strides toward rehabilitation and his reluctance to recidivate." (*Id.* at 4, 8.)

**For the reasons stated below, the § 2255 Petition and the § 3582 Motion are respectfully denied.[2]**

I. **Background**

Between 2010 and 2011, Smith was a member of an armed "crew" that robbed large-scale drug dealers and sold the stolen drugs in the Bronx and upper Manhattan. (Presentence Investigation Report, dated March 7, 2016 ("PSR") ¶¶ 10, 11.) On February 16, 2011, Smith and his associates targeted Danny Ulerio Lora, who himself trafficked large quantities of cocaine. (*See* PSR ¶¶ 11, 13.) Armed with firearms, Smith and his associates surrounded Lora's vehicle with their own vehicles. (*See* PSR ¶ 13.) When Lora attempted to flee, Smith shot Lora through the driver's side window of Lora's vehicle, striking Lora in the head and killing him instantly. (*See* PSR ¶ 13.) Smith and his crew fled the crime scene without taking Lora's drugs. (*See* PSR ¶ 14.) Smith was arrested on November 25, 2013. (*See* PSR.)

---

[1] *Davis* held that the "residual clause" of 18 U.S.C. § 924(c) was unconstitutionally vague.

[2] **Any issues or arguments raised by the parties but not specifically addressed in this Decision & Order have been considered by the Court and rejected.**

On December 14, 2015, Smith waived indictment and pleaded guilty to an Information without the benefit of a plea agreement. (*See* Plea Hr'g Tr., dated Dec. 14, 2015.) As noted, Count One of the Information charged Smith with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); Count Two charged him with conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841; and Count Three charged him with discharging a firearm in furtherance of a crime of violence (*i.e.*, the conduct charged in Count One) and in furtherance of a drug trafficking offense (*i.e.*, the conduct charged in Count Two) in violation of 18 U.S.C. § 924(c).

On July 27, 2016, the Court sentenced Smith to 34 years of incarceration, or 408 months, and five years' supervised release. Smith's guidelines range was 360 months to life; his offense level was 40; and his CHC was V. The Court sentenced Smith to 24 years' imprisonment on Counts One and Two to run concurrently, plus ten years' imprisonment on Count Three to run consecutively.[3] (*See* Judgment, dated July 28, 2016.)

On August 2, 2016, Smith appealed his sentence, arguing that his 24-year prison term for Count One exceeded the statutory maximum penalty of 20 years. *See* 18 U.S.C. § 1951(a). By summary order dated November 2, 2017, the Second Circuit vacated the sentence and remanded to the District Court to "either specify the sentences imposed on Counts One and Two or to resentence Smith." *United States v. Smith*, 713 F. App'x 30, 33 (2d Cir. 2017). On March 1, 2018, the Court confirmed that the original sentence was "20 years on Count 1, to run concurrently with 24 years on [C]oun[t] 2, to be followed by 10 years consecutive on Count 3." (Sent'g Tr., dated March 12, 2018, at 9:1-3.) On March 5, 2018, Smith appealed again and challenged the reasonableness of his sentence. (*See* Dkt. # 119.) By Summary Order dated June 18, 2019, the

---

[3] Smith's projected release date is April 20, 2043.

Second Circuit affirmed, "**conclud[ing] that [Smith's] below-Guidelines sentence of 34 years' imprisonment is substantively reasonable**." *United States v. Smith*, 768 F. App'x 97 (2d Cir. 2019) (emphasis added).

The Government opposes both the § 2255 Petition and the § 3582 Motion. With respect to the § 2255 Petition, the Government contends persuasively that the Hobbs Act "extends to the robbery of both lawful and unlawful property, including illicit narcotics," and that "[t]he Supreme Court has upheld the application of the Hobbs Act to the robbery of narcotics as within the exercise of Congress's Commerce Clause powers." (Gov't Br. at 5 (quoting *Taylor v. United States*, 136 S. Ct. 2074, 2077–78 (2016)).) The Government also argues that because Smith admitted to "knowingly using and carrying a firearm in connection with a narcotics conspiracy ***and*** a robbery conspiracy," his "guilt on the separate narcotics trafficking predicate is sufficient to uphold his § 924(c) conviction." (*Id.* at 8 (emphasis added).)

Smith's former counsel, Avraham C. Moskowitz, submitted a letter to the Court on March 9, 2023. He contends that his "performance was not ineffective" because Smith's "guilty plea was supported by an adequate factual basis that satisfied all of the elements of the three crimes to which he pled guilty." (Moskowitz Ltr. dated March 9, 2023.) Moskowitz points out that because Smith was "charged conspiracy to commit a Hobbs Act robbery and not the substantive robbery, the fact that Mr. Smith and his coconspirators did not actually take any of the drugs that they intended to steal is of no legal consequence." (*Id.*)

With respect to the § 3582 Motion, the Government persuasively shows that (1) none of Smith's alleged medical conditions is "sufficient to demonstrate an extraordinary and compelling reason for compassionate release," and (2) "the Section 3553(a) factors strongly counsel against compassionate release." (Gov't Opp. at 4, 7.) Moreover, "the seriousness of Smith's conduct,

4

Smith's extensive criminal history, and the need for deterrence at the time of sentencing has not changed – and should not change – due to the pandemic and [Smith's] medical conditions." (*Id.* at 7.) The Government also contends that Smith's continued incarceration is necessary to "protect[] the public from further crimes of Smith," in light of the danger that he presents to the community. (*Id.* at 8.)

## II. Legal Standard

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998); *see also Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019). Failure to raise a claim on direct review results in procedural default unless the petitioner "can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 621 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)).

18 U.S.C § 924(c) authorizes heightened criminal penalties for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c). "The statute proceeds to define the term 'crime of violence' in two subparts – the first known as the elements clause, and the second the residual clause." *Davis,* 139 S. Ct. at 2324. In June 2019, the Supreme Court invalidated the residual clause as unconstitutionally vague in *United States v. Davis*, 139 S. Ct. 2319 (2019). The definition of "drug trafficking crime" set forth in § 924(c)(2) is undisturbed by *Davis. See id.* "[A] section 924(c) conviction predicated on Hobbs Act robbery conspiracy remain[s] valid even after *Davis* [where] the indictment identifie[s] a narcotics trafficking conspiracy as an alternate

5

predicate." *Lopez v. United States*, No. 16-CR-719-3 (RJS), 2022 WL 912698, at *4 (S.D.N.Y. Mar. 29, 2022) (citing *United States v. Dussard*, 967 F.3d 149, 151-53 (2d Cir. 2020)).

"[A] claim [of ineffectiveness] does not arise unless a lawyer's error is so egregious as to amount to a failure to provide even minimal professional representation." *Valencia v. United States*, 2010 WL 743034, at *2 (S.D.N.Y. Mar. 4, 2010) (citing *Lynn v. Bliden*, 443 F.3d 238,247 (2d Cir. 2006)). To prevail on a claim of ineffective assistance of counsel, a litigant must (1) show that his counsel's representation "fell below an objective standard of reasonableness" under "prevailing professional norms" and (2) "affirmatively prove prejudice" by demonstrating a reasonable probability that, but for counsel's alleged unprofessional errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 688, 688–89, 693–94 (1984). "[S]crutiny of counsel's performance must be 'highly deferential' because [the Court] must apply 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 689).

Under 18 U.S.C. § 3582(c)(1)(A), "the court may not modify a term of imprisonment once it has been imposed," unless it finds that (1) "extraordinary and compelling reasons merit reducing the sentence," and (2) "the applicable section 3553(a) [sentencing] factors warrant the reduction." *United States v. Bennett*, No. 15 CR. 95 (JPC), 2022 WL 3445349, at *2 (S.D.N.Y. Aug. 17, 2022) (citing *United States v. Pabon*, No. 17 Cr. 312 (JPC), 2021 WL 603269, at *2 (S.D.N.Y. Feb. 16, 2021).

The Court must consider whether "the defendant is . . . a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13. "[T]he relevant § 3553(a) factors"—"[m]ost importantly, . . . that [the defendant] is . . . a danger to the safety of the community"—"outweigh

any extraordinary and compelling reasons [which may] warrant[] compassionate release." *United States v. Tisdale*, 2020 WL 5441584, at *3 (S.D.N.Y. Sept. 9, 2020) (citations and omissions omitted).

### III. Analysis

**§ 2255 Petition**

Smith did not raise the arguments presented here in direct appeal of his convictions. *See Bousley*, 523 U.S. at 621; *see also United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal."). But even if Smith had raised these arguments on direct appeal, his § 2255 Petition should be denied.

The Government correctly shows that "Smith's challenges to his conviction for Hobbs Act robbery conspiracy either have been rejected by binding precedent or are based on a misunderstanding of the case law." (Gov't Br. at 8; *see Taylor v. United States*, 579 U.S. 301, 307 (2016).)

And, as the Government correctly argues, "Smith's guilt on the separate narcotics trafficking predicate is sufficient to uphold his § 924(c) conviction." (Gov't Br. at 8; *see also United States v. Dussard*, 967 F.3d 149, 151–53 (2d Cir. 2020).)

Smith's counsel was not ineffective for failing to challenge the sufficiency of evidence on his robbery conviction because Smith was "charged [with] conspiracy to commit a Hobbs Act robbery and not the substantive robbery, [therefore] the fact that Mr. Smith and his coconspirators did not actually take any of the drugs that they intended to steal is of no legal consequence." (Moskowitz Ltr. dated March 9, 2023.)

Counsel is not ineffective for refusing to bring unpersuasive arguments. *See Strickland*, 466 U.S. at 688–89. Moreover, counsel "discussed fully [with Smith] . . . th[e] charges in the information," (Plea Hr'g Tr., dated Dec. 14, 2015, at 10:21-24), and Smith testified that he was "fully satisfied with Mr. Moskowitz's legal representation," (*id.* at 11:4-6.)

**§ 3582 Motion**

Smith appears to have exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A) by timely submitting his application for compassionate release to the BOP. (*See* Mot. 4.) Smith advises that the BOP denied his application but does not provide an explanation for the denial. *See also United States v. Burman*, 2020 WL 3182766, at *2 (S.D.N.Y. June 13, 2020) (movant exhausted his administrative remedies when "more than thirty days . . . passed since [movant] petitioned BOP for compassionate release," and BOP denied the request).

**Absence of Extraordinary and Compelling Reasons**

Smith has failed to demonstrate "extraordinary and compelling reasons" for early release from prison for several reasons:

*First*, FCI Otisville appears to be managing potential COVID-19 outbreaks and does not appear to have a significant COVID-19 problem. *See* BOP, "BOP COVID-19 Statistics," https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Apr. 22, 2023); *see also United States v. Booth*, No. 19 CR. 699 (JGK), 2022 WL 2119097, at *1 (S.D.N.Y. June 10, 2022) ("[O]nly one inmate and three staff members at Otisville have recently tested positive for COVID-19, an indication that COVID-19 is currently well-controlled at the facility"); *United States v. Siraj*, No. 05-CR-00104 (NG), 2023 WL 2569398, at *6 (E.D.N.Y. Mar. 20, 2023) (citation omitted) ("Otisville's COVID-19 risk level . . . has been adjusted down to level 1 (Green), which means that medical isolation rates are below 2%"). According to the BOP website, as of April 22,

8

2023, there were no active cases of COVID-19 among FCI Otisville's 1,089 inmates; there is one active case among staff. *See* BOP COVID-19 Statistics. As of April 22, 2023, 886 inmates at FCI Otisville—or 81% of the inmate population—are fully vaccinated. *Id.* One inmate has died from COVID-19 at Smith's facility, and 300 inmates have fully recovered. *Id.* Notwithstanding a movant's asserted medical conditions, there "is not a basis for compassionate release" when the movant's "application . . . amounts to mere speculation that there might be a COVID-19 outbreak" at his prison facility, and there is no actual evidence that the facility is "particularly ill-suited to containing a COVID-19 outbreak or that it is a particularly vulnerable institution." *United States v. Sattar*, 467 F. Supp. 3d 152, 156 (S.D.N.Y. 2020) (citing *United States v. Hidalgo*, 462 F. Supp. 3d 470, 474–75 (S.D.N.Y. May 26, 2020)).

*Second*, Smith, who, as noted, is 48 years of age, "has received two doses of the COVID-19 Moderna vaccine, and received the Moderna vaccine booster on January 20, 2022." (Gov't Opp. at 4 (citing Ex. A, 2021-2022 Medical Records, at 64).) The Center for Disease Control ("CDC") advises that "COVID-19 vaccines available in the United States are effective at protecting people from getting seriously ill, being hospitalized, and dying." (Gov't Opp. at 4 (quoting the CDC, "Stay Up to Date with COVID-19 Vaccines Including Boosters," https://www.cdc.gov/coronavirus/2019- ncov/vaccines/booster-shot.html (last updated Apr. 13, 2023)).) Courts in the Southern District of New York have held that inmates who are fully vaccinated do not demonstrate extraordinary and compelling reasons for their release. *See, e.g., United States v. Jaber*, No. 13 Cr. 485 (CM), 2022 WL 35434, at *2–3 (S.D.N.Y. Jan. 4, 2022); *United States v. Barnett*, No. 90 Cr. 913 (LAP), 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021); *United States v. Arbabsiar*, No. 11 Cr. 897 (JFK), 2021 WL 2433757, at *3 (S.D.N.Y. June 15, 2021).

*Third*, while Smith has been diagnosed with "Schizophrenia" and "Bipolar disorder," (Gov't Opp., Ex. A. at 57), Smith's medical records also appear to show that these disorders are "managed with the prescription medications Benztropine and Haloperidol Decanoate." (Gov't Opp. at 5 (citing Ex. B, 2022-2023 Medical Records, at 2); *see also United States v. Armstrong*, No. 14 Cr. 633 (NLH), 2022 WL 1261530, at *4 (D.N.J. Apr. 27, 2022) ("Defendant [who suffered from bipolar disorder, obesity, and hypertension] has not pointed to any medical conditions that militate toward release"); *see also United States v. Elias*, No. 18 Cr. 419 (GHW), 2020 WL 5764375, at *2 (S.D.N.Y. Sept. 28, 2020) ("schizophrenia does not constitute an extraordinary and compelling reason" where it is "being treated with medication").) Smith's claim of depressive disorder does not appear to be substantiated, (*see* Gov't Opp. at 5–6 (citing Ex. A at 58, 67; Ex. B at 33, 65)), and, in any event, does not constitute an extraordinary and compelling reason for release. *See, e.g., United States v. Caraballo*, No. 14 Cr. 255 (Salas, J.), 2022 WL 60697, at *5–7 (D.N.J. Jan. 6, 2022).

*Fourth*, although Smith's medical records confirm that he is obese, the records indicate that he seems likely to obtain a prescription for weight management medication at his next BOP health screening. (*See* Gov't Opp. at 6–7 (citing Ex. B at 3–4).) "Courts in this district have routinely denied compassionate release motions where the defendant was obese and suffered from another comorbidity, especially in situations where the defendant is fully vaccinated." (Gov't Opp. at 7 (citing *United States v. Brown*, No. 1:18-CR-00339-PAC-3, 2021 WL 5233506, at *3 (S.D.N.Y. Nov. 10, 2021); *United States v. Morel*, No. 10-CR-798 (PAC), 2021 WL 2821107, at *1 (S.D.N.Y. July 7, 2021)).)

The BOP medical records appear to show that Smith is receiving care and medical treatment at FCI Otisville.

**Danger To The Safety Of Other Persons And To The Community**

Even if Smith had established extraordinary and compelling circumstances (which he has not), the Court would be constrained to deny his § 3582 motion because Smith "poses a danger to the safety of other persons and to the community." U.S.S.G. § 1B1.13; (*see also* Gov't Opp. at 8.) As the Government points out, Smith is serving a 34-year prison term because, among other things, he "callously took away the life of another individual" while attempting "to steal kilogram quantities of cocaine." (Gov't Opp. at 1, 7.) And, it appears that this was the second time Smith "took . . . the life of another," as "[s]ixteen years prior to this murder, [Smith] shot and killed another individual named Carlos Hernandez in the Bronx during a dispute with his cousin." (*Id.* at 7 (citing Dkt. 62, at 4).) Smith's prison record reflects disciplinary action since March 8, 2011, including February 15, 2017, when Smith admitted to possessing a dangerous weapon, *i.e.*, "a 7" sharpened weapon [found] in the locker of his assigned cell in a lotion bottle." (*See* Gov't Opp. at 8 (citing Ex. C, BOP disciplinary record, at 1).)

In sum, the sentence reduction sought by Smith would not adequately "reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant." *United States v. Batista*, 2020 WL 3249233, at *6 (S.D.N.Y. June 16, 2020); *see also United States. v. Garcia*, 2020 WL 2468091, at *4 (S.D.N.Y. May 13, 2020).

### IV. Certificate of Appealability

The Court does not recommend that a certificate of appealability be issued in this case. *See* 28 U.S.C. § 2253(c); *see also United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997).

11

## V. Conclusion & Order

For the reasons stated herein, Smith's § 2255 Petition [# 128 and 144] **and** Smith's § 3582 Motion [#132] are respectfully denied. The Clerk of the Court is requested to send a copy of this Decision & Order to Defendant and to close this case.

Dated: New York, New York
April 24, 2023

*/s/ RMB*

**RICHARD M. BERMAN, U.S.D.J.**